## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## LAFAYETTE DIVISION

| | | |
|---|---|---|
| **JULIO VIRGEN** | * | **CIVIL NO. 6:15-0465** |
| **VERSUS** | * | **JUDGE DOHERTY** |
| **CONRAD INDUSTRIES, INC., ET AL** | * | **MAGISTRATE JUDGE WHITEHURST** |

## MEMORANDUM RULING

Pending before me is plaintiff's Motion to Proceed as a Collective Action, Judicial Notice, and for Disclosure of the Names and Addresses of the Potential Opt-in Plaintiffs filed by Julio Virgen ("Virgen") on September 13, 2015.  [rec. doc. 44].  Defendant, Impact Marine & Industrial Services, LLC ("Impact"), filed opposition on October 15, 2015.  [rec. doc. 61]. Defendant, Conrad Industries, Inc. ("Conrad"), filed opposition on October 15, 2015.  [rec. doc. 62].  Virgen filed a reply on October 21, 2015.  [rec. doc. 66].

Oral argument on the motion was held on October 21, 2015, after which the Motion was taken under advisement.

For the following reasons, the plaintiff's motion is **DENIED.**

## I. BACKGROUND

Virgen filed this action alleging a claim under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 206, 207, on behalf of himself and similarly situated employees against Conrad,

Impact, and M&M Group Inc. d/b/a National Contracting Service ("M&M").[1]

Conrad constructs and repairs boats at two facilities in Morgan City, Louisiana, and one in Amelia Louisiana, in St. Mary Parish.  [rec. doc. 44, Declaration of Julio Virgen ("Virgen Decl."), ¶¶ 3-5; Declaration of Pedro Cruz ("Cruz Decl."), ¶¶ 5, 7; rec. doc. 62, Declaration of Shane A. Alfred ("Alfred Decl."), ¶ 4].  Conrad employs painters, welders, metal cutters and manual laborers from labor staffing agencies.  In the past three years, Conrad has utilized approximately 13 staffing companies, including Impact, at its three work sites. [ Alfred  Decl., ¶ 4].

According to Virgen, he was hired by Impact to work as a painter for Conrad.  [Virgen Decl., ¶¶ 2, 6].  He asserts that he started working for Conrad on or about December 27, 2012, on the Conrad Deepwater yard located in Amelia, Louisiana.  [Virgen Decl., ¶ 3].  Over the duration of his employment through December, 2014, Virgen claims that he worked at two other Conrad facilities: Conrad Aluminum in East Amelia, Louisiana, and Conrad Morgan City in Morgan City, Louisiana. [Virgen Decl., ¶ 5].  He contends that Conrad's foremen supervised and controlled Virgen's work, and determined Virgen's work schedule.  [Virgen Decl., ¶¶ 8, 9].

Virgen alleges that he was paid a cash wage of $21.00 per hour, and worked an average of 70 hours per week.  [Virgen Decl, ¶ 10].  He claims that for every hour that he worked in excess of 40 in any particular week, he was paid $24.00 per hour.  [Virgen Decl., ¶ 10].  He

---

[1]  Plaintiff has dismissed his claims against M&M.

states the he picked up his paychecks, which bore the name "Impact Marine," from Conrad's offices.  [Virgen Decl., ¶ 14].

Pedro Cruz ("Cruz") alleges that he was hired by an employee of Permanent Workers, LLC ("Permanent Workers") to work as a painter for Conrad in June, 2011.  [Cruz Decl., ¶¶ 2, 3].  He claims that he worked at all three of Conrad's Louisiana facilities.  [Cruz Decl., ¶¶ 3, 5].  He contends that his work was supervised and controlled by Conrad foremen, who also made and set Cruz's work schedule.  [Cruz Decl., ¶¶ 8, 9].

According to Cruz, he earned a cash wage of $17.00 to $18.00 per hour.  [Cruz Decl., ¶ 11].  He claims that he averaged approximately 65 to 70 hours per workweek.  [Cruz Decl., ¶ 10].  He alleges that for every hour which he worked in excess of 40 in any particular week, he was paid $21.00 per hour.  [Cruz Decl., ¶ 10].

Virgen and Cruz allege that, depending on the yard and time of day, they worked alongside anywhere between 80 and 120 painters, welders and metal cutters.  [Virgen Decl., ¶ 13; Cruz Decl., ¶12].  Both claim that they knew "for a fact" that many of these workers did not receive full overtime compensation.  [Virgen Decl., ¶ 13; Cruz Decl., ¶ 12].

Additionally, Cruz alleges that in or about March of 2015, he spoke with Jorge Antonio Kualin ("Kualin"), who was also a worker at Conrad and performed the same duties.  [Cruz Decl., ¶ 13].  He claims that Kualin told him that he was not receiving any overtime compensation from Conrad for any hours that he worked over 40 in any work week.  [Cruz Decl., ¶ 13].  Cruz also asserts that Kualin informed him that he would be interested in receiving notice of this action.  [Cruz Decl., ¶ 14].

Further, Cruz contends that in February, 2015, he went to apply for a job with Permanent Workers, and noticed a long line of people.   [Cruz Decl., ¶ 15].  He claims that some of the people told him that they were in line to get past-due overtime money from Permanent Workers.  [Cruz Decl., ¶ 15].  He alleges that after waiting in line, he received $2,200.00 from Permanent Workers, which amount does not reflect the full amount of overtime work that he performed for Permanent Workers and/or Conrad.  [Cruz Decl., ¶¶ 15, 16].

Impact concedes that some of its employees worked for Conrad during the relevant time period.  Impact asserts, however, that it has no record of employing anyone named Julio Virgen or Pedro Cruz.  [rec. doc. 61, Exhibit A, Affidavit of Jesus Sauceda ("Sauceda Affidavit"), ¶¶ 4-8].

Likewise, Conrad asserts that it has no records indicating that Virgen was ever employed directly by Conrad or by any staffing company working with Conrad.  [Alfred Decl., ¶ 10].  Conrad also contends that Cruz was never a direct employee of Conrad, but was allegedly employed by another staffing company, Permanent Workers.  [Alfred Decl., ¶ 11].

According to Sauceda, in September, 2015, Impact was served with a Worker's Compensation Claim of Julio Virgen. [Sauceda Decl., ¶ 13; rec. doc. 61, Exhibit B].  Pointedly, the "Disputed Claim of Compensation" attached to the worker's compensation paperwork states as follows: "Please note that Julio Virgen was employed by the Defendant [Impact] under the name 'Robert Martinez.' "  [rec. doc. 61, Exhibit B, Disputed Claim for Compensation, p. 2].

Included in the documentation received by Impact as part of the worker's compensation

4

claim were an Employment Application, Form W-4 and Form I-9 completed by "Robert Martines." [rec. doc. 61, Exhibit C].  Sauceda represents that Impact verified that "Robert Martines" was legally authorized to work in the United States and that, based on this verification, Impact continued to employ him.  [Sauceda Decl., ¶ 15; Exhibit D].

According to Sauceda, at no time during Robert Martines' employment was he or Impact aware that the information provided by Robert Martines was fraudulent or fictitious.  [Sauceda Decl., ¶ 16].  Sauceda further asserts that at no time during Robert Martines' employment was he or Impact aware that Robert Martines' real name was Julio Virgen.  [Sauceda Decl., ¶ 17].

In the instant motion, plaintiff moves to conditionally certify a collective action under 29 U.S.C. § 216(b) of the FLSA, and for judicially-approved notice to be sent all Putative Class Members by first class mail and e-mail.  If granted conditional certification under 29 U.S.C. § 216(b), plaintiff asks the Court to direct defendants to: (1) provide plaintiff with the  names and last known addresses of the potential opt-in plaintiffs, and (2) approve the sending of the class notice to the potential opt-in plaintiffs.  Plaintiff also requests that this Court approve an opt-in period of six months.

Defendants deny plaintiff's allegations and oppose collective action certification under 29 U.S.C. § 216(b).

## II. APPLICABLE LAW

Virgen moves for conditional collective action certification under the FLSA.  Impact and Conrad argue that conditional certification is inappropriate because neither have any records

of employing Julio Virgen or Pedro Cruz.  The defendants further submit the conclusory statements contained in the declarations submitted by Virgen and Cruz in support of conditional certification fail to establish that Virgen and the putative collective action plaintiffs are similarly situated for purposes of the FLSA.[2]

The Fair Labor Standards Act sets a general minimum wage for employees engaged in commerce.  29 U.S.C. § 206(a)(1). Section 207(a) requires covered employers to compensate nonexempt employees at overtime rates for time worked in excess of statutorily defined maximum hours.  29 U.S.C. § 207(a).  The FLSA creates a cause of action for violations of provisions of the Act, which include the minimum wage and overtime provisions. 29 U.S.C. § 216(b).

Section 216(b) of the FLSA permits a plaintiff to maintain such an action on "behalf of himself  . . .  and other employees similarly situated.  No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."  29 U.S.C. § 216(b).  A collective action affords plaintiffs "the advantage of lower individual costs to vindicate rights by the pooling of resources.  The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact." *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170, 110

---

[2]  At the motion hearing, Conrad agreed that conditional certification of a collective action of individuals who worked or are working performing manual labor for Conrad indirectly through Impact would be appropriate, but maintained that such an action would not be appropriate as to the larger group of individuals who worked or are working performing manual labor for Conrad through other staffing agencies during the previous three years.  Impact maintains that certification of any collective action in this case is inappropriate.

6

S.Ct. 482, 486 (1989).

Unlike class actions brought under Fed. R. Civ. Proc. 23, a collective action under the FLSA provides an "opt-in" rather than an "opt-out" procedure for potential plaintiffs. *Mooney v. Aramco Services*, 54 F.3d 1207, 1212 (5th Cir. 1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90, 90-91, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003).  District courts have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) in FLSA actions by facilitating notice to potential plaintiffs.  *Hoffman-La Roche, Inc.*, 493 U.S. at 169-170.

Two requirements must be met to maintain a collective action under the FLSA. *Boudreaux v. Schlumberger Technology Corp.*, 2015 WL 796602, *2 (W.D. La. Feb. 25, 2015); *Green v. Plantation of Louisiana, LLC*, 2010 WL 5256354, *3 (*quoting Whitworth v. Chiles Offshore Corp.*, 1992 WL 235907, *1 (E.D. La. 1992) (McNamara, J.)).  First, the named representatives and the members of the prospective FLSA class must be similarly situated.  *Id*. There must be "some factual nexus which binds the named plaintiffs and the potential class members together as victims of a particular alleged [policy or practice]." *Id.*; *England v. New Century Financial Corp.*, 370 F.Supp.2d 504, 508 (M.D. La. 2005). Second, the action at issue must be one of general effect.  *Whitworth*, 1992 WL 235907, at *1.  Accordingly, a court may deny a plaintiff's right to proceed collectively only if the action arises from circumstances purely personal to the plaintiff, and not from any general applicable rule, policy or practice.  *Id*. (*citing Burt v. Manville Sales, Corp*, 116 F.R.D. 276, 277 (D. Colo. 1987)); *Basco v. Wal-Mart Stores Inc.*, 2004 WL 1497709, at *5 (E.D. La. 2004) (Duval, J.).

Plaintiffs bear the burden of establishing that they are "similarly situated" to the

7

proposed class. *Basco*, 2004 WL 1497709, at *5 (*citing Pfohl v. Farmers Ins. Group*, 2004 WL 554834, *2 (C.D. Cal. March 1, 2004, *citing White v. Osmose, Inc.*, 204 F.Supp.2d 1309, 1313 (M.D. Ala. 2002)).  The FLSA does not define the term "similarly situated" such that collective adjudication of their claims is appropriate. *Boudreaux*, 2015 WL 796602, at *2.  Under the jurisprudence, however, "[w]hether employees are 'similarly situated' is determined in reference to their 'job requirements and with regard to their pay provisions.' " *Xavier v. Belfor USA Group, Inc.*, 585 F.Supp.2d 873, 877 (E.D. La. 2008) (Zainey, J.) (*quoting Lima v. International Catastrophe Solutions, Inc.*, 493 F.Supp.2d 793, 798 (E.D. La. 2007)); *Lentz v. Spanky's Restaurant II, Inc.,* 491 F.Supp.2d 663, 669 (N.D. Tex. 2007); *Eggelston v. Sawyer Sportsbar, Inc.*, 2010 WL 2639897, *3 (S.D. Tex. June 28, 2010) (noting that "a minimal showing that all members of the class are similarly situated in terms of job requirements and pay practice" is required).

Similarly situated does not mean identically situated. *Basco,* 2004 WL 1497709, at *5 (*citing Crain v. Helmerich and Payne Intern'l Drilling Co.*, 1992 WL 91946, *2 (E.D. La. April 16, 1992)).  Thus, "[s]light differences in job duties or functions do not run afoul of the similarly situated requirement." *Tolentino v. C & J Spec-Rent Services, Inc.*, 716 F.Supp.2d 642, 652 (S.D. Tex. 2010).  If the job duties among potential members of the class vary significantly, however, then class certification should not be granted. *Id.* (*citing Dreyer v. Baker Hughes Oilfield Operations, Inc.*, 2008 WL 5204149, at *2 (S.D. Tex. Dec. 11, 2008)); *Harris v. Fee Transportation Services, Inc.*, 2006 WL 1994586, *5 (N.D. Tex. May 15, 2006).

Likewise, if the named plaintiffs and potential class members are compensated differently, class certification is not appropriate. *See Lentz*, 491 F.Supp.2d at 669; *Sheffield v. Orius Corp.*, 211 F.R.D. 411, 413 (D. Or. 2002) (collective action certification denied based on the fact that the potential plaintiffs held different job titles, with different payment structures – piece-rate, hourly and salaried).

Courts have utilized two methods for determining whether plaintiffs are similarly situated such that a collective action should be certified, the "two-step" method developed in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D. N.J. 1987), and the "spurious class action" procedure employed by the district court in *Shushan v. University of Colorado*, 132 F.R.D. 263 (D. Colo. 1990).[3]  *Mooney*, 54 F.3d at 1213-1215.  The Fifth Circuit has expressly refused to endorse either method over the other.  *Mooney*, 54 F.3d at 1216; *Vanzzini v. Action Meat Distributors, Inc.*, 995 F.Supp.2d 703, 719 (S.D. Texas 2014).

The prevailing method, however, seems to be the "two-step" approach.  *Lang v. DirecTV, Inc.*, 735 F.Supp.2d 421, 435 (E.D. La. 2010) (Vance, J.) (*citing Johnson v. Big Lots Stores, Inc.*, 561 F.Supp.2d 567, 569 (E.D. La. 2008) (conditional certification is the majority approach); *Basco*, 2004 WL 1497709, at *4 ("the two-step *ad hoc* approach is the preferred method for making the similarly situated analysis"); *England*, 370 F.Supp.2d at 509 (noting that the two step approach has been "embraced" more often in the Fifth Circuit than the

---

[3]The "spurious class action" procedure, derives from the "spurious" class action procedure previously eliminated from Fed. R. Civ. P. 23.  *Moone*y, 54 F.3d at 1214. Under this approach, the court considers factors similar to those considered in Rule 23(c) cases, that is,  "numerosity," "commonality," "typicality," and "adequacy of representation," to determine whether a class should be certified.  *Id.*  Neither party argues that this procedure should be applied.

'"Spurious Class Action" approach).

This method is consistent with the Fifth Circuit's conclusion in *LaChapelle v. Owens-Illinois, Inc.*, 513 F.2d 286, 288 (5th Cir. 1975), that "[t]here is a fundamental, irreconcilable difference between the class action described by Rule 23 and that provided for by FLSA § 16(b)," namely the "opt-out" procedure for class members under Rule 23 as contrasted with the "opt-in" procedure under § 216(b).  *See also Donovan v. Univ. of Texas at El Paso*, 643 F.2d 1201, 1206 (5th Cir. 1981) ("[t]he statutory framework of enforcement procedures of the FLSA and those of Title VII are crucially different, but this difference highlights even more why Rule 23 is not needed in FLSA suits. The FLSA procedure, in effect, constitutes a congressionally developed alternative to the F. R. Civ. P. 23 procedures."). Finally, the Fifth Circuit has referred to the two-step approach as the typical  manner in which collective actions proceed.  *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 915 n. 2 (5th Cir. 2008).  Based on the above, the undersigned finds that the "two-step"method is the preferred method in the Fifth Circuit for the analysis and will be used by this Court.

The "two-step" method lends itself to *ad hoc* analysis on a case-by-case basis.  *Mooney*, 54 F.3d at 1213.  Under the two-step method, the Court analyzes the "similarly situated" inquiry using a two-step analysis.  In the first step, the "notice stage," the Court determines whether notice should be given to potential members of the collective action, "usually based only on the pleadings and any affidavits."  *Mooney*, 54 F.3d at 1213-1214.  Because the court has little evidence at this stage, "this determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class."  *Id*. at 1214.

If the Court grants conditional certification, notice to prospective claimants is issued, and the case proceeds as a collective action through discovery. *Id*. In the second step, generally done on the defendant's motion to decertify the conditional class filed after discovery is largely complete, the court considers, with the benefit of considerably more information, whether the employees are similarly situated. *Id*. If the court decides that a collective class action is inappropriate, then it dismisses the opt-in plaintiffs and the case proceeds on the named plaintiffs' individual claims only. *Id.*

When considering whether to conditionally certify a collective action, the court has a responsibility to refrain from stirring up unwarranted litigation. *H&R Block, Ltd. v. Housden,* 186 F.R.D. 399, 401 (E.D. Texas 1999) (*citing D'Anna v. M/A-COM, Inc*., 903 F.Supp. 889, 894 (D. Md. 1995)); *Xavier*, 585 F.Supp.2d at 878. This is so because "employers should not be unduly burdened by a frivolous fishing expedition conducted by the plaintiff at the employer's expenses." *Id*. (*quoting D'Anna*, 903 F.Supp. at 894); *Xavier*, 585 F.Supp.2d at 878.

On the other hand, a collective action can be an effective mechanism for resolving common issues in one consolidated action. *See Hoffmann-La Roche*, 493 U.S. at 170. Thus, courts have endorsed the sending of notice early in the proceeding as a means of facilitating the FSLA's broad remedial purpose and promoting efficient case management. *See Realite v. Ark Restaurants Corp*., 7 F.Supp.2d 303, 306 (S.D. N.Y. 1998) (and cases cited therein).

However, "an action dominated by issues particular to individual plaintiffs cannot be administered efficiently because individual issues predominate over collective concerns." *Sheffield*, 211 F.R.D. at 413. Therefore, "courts must strive to balance the efficiency of

11

aggregating claims in one action against the expense and inconvenience of frivolous litigation." *Sims v. Housing Authority City of El Paso*, 2010 WL 2900429, *2 (W.D. Texas July 19, 2010).

At the "notice stage," the grant of conditional certification requires "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Mooney*, 54 F.3d at 1214 n. 8 (*citing Sperling v. Hoffman-La Roche, Inc.*, 118 F.R.D. at 407). The plaintiff bears the burden, however, of making a preliminary factual showing that similarly situated individuals exist. *Lima*, 493 F.Supp.2d at 798. "There must be a showing of some identifiable facts or legal nexus that binds the claims so that hearing the cases together promotes judicial efficiency." *Tolentino,* 716 F.Supp.2d at 647; *Basco*, 2004 WL 1497709, at *5 (*citing Barron v. Henry County School System*, 242 F.Supp.2d 1096, 1103 (M.D. Ala. 2003)). Thus, while the standard at the "notice stage" is lenient, it is by no means automatic. *Id.*; *Xavier*, 585 F.Supp.2d at 878. Indeed, it "would be a waste of the Court's and litigants' time and resources to notify a large and diverse class only to later determine that the matter should not proceed as a collective action because the class members are not similarly situated." *Freeman v. Wal-Mart, Inc.*, 256 F.Supp.2d 941, 945 (W.D. Ark. 2003).

### III.  ANALYSIS

In this case, plaintiff seeks to certify the following class:

All individuals who worked or are working performing manual labor directly for Conrad Industries, Inc. or indirectly through Impact Marine LLC, or any other labor staffing company, during the previous three years, and who are eligible for overtime pay pursuant to the FLSA, 29 U.S.C. § 207, and who did not receive full overtime compensation.

12

Thus, the three classifications of workers sought to be conditionally certified by plaintiff are: (1) those directly employed by Conrad; (2) those employed by Impact and assigned as temporary labor to Conrad, and (3) those employed by any other staffing company doing business with and assigned to work with Conrad.  At the hearing on the motion, the parties conceded that no conditional collective certification exists as to the direct employees of Conrad. While Conrad agrees that conditional certification of a collective action may be appropriate for individuals working for Conrad through Impact, Impact does not.  Accordingly, the only issues regarding conditional certification are as to Impact's employees assigned to work for Conrad and those employed by the 12 other staffing companies assigned to work for Conrad.

As to those employed by Impact and assigned as temporary labor to Conrad, neither Conrad nor Impact have any record of Virgen working for them. [rec. doc. 62, Exhibit 1, rec. doc. 61, Exhibit A].  There is indication in the record that Virgen worked for Impact under an assumed name, using a false social security number on his employment application, W-4 and Form I-9. [rec. doc. 61, Exhibit B].  This calls into question the reliability of the statements contained in Virgen's declaration.

The affidavit of Jesus Sauceda, Impact's owner and manager, indicates that Impact has neither employed nor has any knowledge of anyone by the name of Julio Virgen or Pedro Cruz. [Sauceda Decl., ¶ 13, ¶¶ 4-8].  Additionally, Sauceda contends that in September, 2015, Impact was served with a Worker's Compensation Claim of "Julio Virgen." [Sauceda Decl., ¶ 13; rec. doc. 61, Exhibit B].  Included in the documentation received by Impact as part of the worker's

13

compensation claim are the Employment Application, W-4 and Form I-9 completed by "Robert Martines," who was legally authorized to work in the United States.  [Sauceda Decl., ¶¶14, 15; rec. doc. 61, Exhibit C).  Sauceda represents that at no time was Impact aware that the information presented by "Robert Martines" was fraudulent or fictitious or that "Robert Martines'" real name was Julio Virgen.  [Sauceda Decl., ¶¶ 16, 17].

Additionally, Impact attached to its brief a transcript from a hearing held before Judge Haik on August 13, 2015, in the matter of *Javier Portillo, et al v. Permanent Workers, LLC, et al*, Docket No. 15-1048.  There, Javier Portillo ("Portillo") filed a Collective Action Complaint against Permanent Workers, Conrad, and Danny Cepero ("Cepero"), Permanent Workers' owner, alleging that Portillo and similarly situated workers were not paid overtime in violation of the FLSA.  Defendants, Permanent Workers and Conrad, filed a motion for summary judgment on the grounds that Portillo was never employed by either Permanent Workers or Cepero.  [Docket No. 15-1048, rec. doc. 10].

At the hearing, Judge Haik addressed the fact that Portillo used an assumed name on his employment application, medical questionnaire, I-9, Social Security card, ID and W-4 forms. Judge Haik granted summary judgment, stating as follows:

> There's no way I would allow this individual to be the main plaintiff in a civil action, even if you have one, and I don't know if you do, because what you have right now is a plaintiff who has filed suit who has admitted to breaking federal statutes, federal law.
>
> ***
>
> I cannot allow someone who has broken federal law to be the number one person in a class action, and since that's all you have right now – I mean, this individual, according to the defendants, is not – did not work for them.  They didn't run the checks on him.  They didn't do their physicals on the gentleman's name that he's

> using now.  The background check was not on that individual.
>
> The Social Security – using a false Social Security card – you know, what happened – there must be such a person with that name that has that Social Security number.  It must be that person.  And that person had to pay extra taxes on his Social Security and his W-2s, because whatever your client made, if that was your client who worked for them – and I'm still not sure it was.  They're not even sure if it was.  But if that person worked for them and used a false Social Security number, that poor sap is charged in his W-2s with receiving those funds and he had to pay extra taxes because of the lies of your client.  I can't do that and I won't do it.

[Docket No. 15-1048, Official Transcript, pp. 18-19].  That case is currently on appeal to the Fifth Circuit.

*Portillo* was filed by the same attorneys who are representing Virgen in this case. Notably, "Julio Virgen" and "Pedro Cruz" also provided supporting affidavits in support of Portillo's Motion for Conditional Class Certification.  [Docket No. 15-1048, rec. doc. 19, Exhibits 8, 9].

Considering the circumstances surrounding Virgen's alleged employment with Conrad and Impact, this Court finds the statements contained in Virgen's declaration questionable of belief and cannot rely on them with certainty regarding conditional certification of a collective action in this case.[4]

Nevertheless, even if the information contained in Virgen's declaration is taken as true, plaintiff makes conclusory and vague statements as to similarities amongst himself and other workers performing manual labor for Conrad indirectly through Impact.  There are not enough

---

[4]  The same fate applies to Cruz's declaration.  There is no record of Cruz working for Permanent Workers, Impact or Conrad.  [rec. doc. 61, Exhibit F, Affidavit of Danny Cepero, ¶¶ 4-6; Sauceda Decl., ¶¶ 4-6; Alfred Decl., ¶ 11].

facts to show that plaintiff and such other employees were similarly situated, *i.e.*, had similar jobs and pay provisions, or that there was a common, unlawful policy or plan.

Specifically, Virgen's affidavit fails to identify one person by name or description who was employed by Impact under the same allegedly objectionable terms and conditions as he. See *Khan,* 2007 WL 2777774. While Cruz's declaration asserts more detailed allegations than Virgen's, Cruz alleges he was employed by Permanent Workers, LLC, not Impact, and offers no specific information regarding workers who were performing work for Conrad indirectly through Impact. Additionally, neither Virgen's, nor Cruz's affidavit alleges in any way the existence of some uniform pay policy applicable to Virgen and the proposed collective action members. For example, neither affidavit alleges that Conrad applied a uniform policy to all employees working indirectly for Conrad through Impact or that Impact applied a uniform overtime policy to all employees that worked at Conrad. At best, the affidavits offer only speculation about the hours and pay of various other manual laborers working for Conrad through unidentified staffing companies. Vague assertions, unsupported by any evidence, are insufficient to permit the court to conclude that other similarly situated plaintiffs exist who would desire to opt-in to the suit. *H&R Block, Ltd.*, 186 F.R.D. at 400; *see also*, *Khan v. Cougar Stop, Inc.*, 2007 WL 2777774, *2 (S.D. Texas Sept. 21, 2007) (certification denied where only evidence submitted was plaintiff's statement that co-workers told him other employees were not being paid overtime wages despite the fact that they routinely worked more than 40 hours per week).

Regarding the next putative class, those employed by any of the other staffing companies

doing business with Conrad, defendants argue that *Xavier v. Belfor USA Group, Inc.*, 585 F.Supp.2d 873, 877 (E.D. La. 2008) is analogous to this case.   There, plaintiffs sought preliminary certification of the following FLSA overtime class: "[a]ll individuals who worked or are working for Belfor USA performing manual labor *either directly or indirectly through various subcontractors* in various projects throughout the United States over the last three years who were eligible for overtime pay pursuant to the FLSA, 29 USC § 207, and who did not receive overtime pay." (emphasis added).  585 F.Supp.2d at 875.  Judge Zainey denied the motion on several grounds, some of which are applicable here.

First, Judge Zainey noted that plaintiffs' evidence, including statements that Belfor controlled the plaintiff workers and their performance, showed only that Belfor, the onsite supervisor, used subcontractors to supply labor because Belfor did not have a directly employed labor force.  He found that this evidence did not show that Belfor had some "plan or policy" to avoid paying overtime payments by subcontracting out labor.  *Id*. at 879

Further, Judge Zainey determined that plaintiffs had failed to show how they were similarly situated to potential opt-in plaintiffs nationwide.  He noted that while the named plaintiffs and potential opt-in plaintiffs might have been denied overtime payments, "the similarity ends there." *Id*. at 880.  He observed that the action taken by each of the 2,100 Belfor subcontractors in at least 44 states would have to be reviewed and individually analyzed to determine, *inter alia*, whether a violation occurred and whether Belfor would be liable for such a violation.  He noted that each subcontractor signed separate agreements with Belfor and had

a different relationship with Belfor.  Additionally, during the relevant time period, Belfor undertook projects involving from less than five workers to more than 2,000 workers.

Judge Zainey found that Belfor had shown that the specific circumstances of each worker was personal to his or her job experience with each of the subcontractors.  However, named plaintiffs had not shown that their circumstances and experiences with the payroll practices of the specific contractor were similar to the payroll practices of the remaining workers who worked for those 2,100 or so subcontractors who contracted with Belfour.  He concluded that "[t]here is simply no evidence of a generally applicable policy or practice and the individual circumstance of each worker is too particularized to warrant collective certification nationwide."  *Id*. at 880.

Like the plaintiff in *Xavier*, Virgen has failed to show that potential opt-ins were part of a common policy, plan or decision implemented by defendants that violated the law.  Specifically,  plaintiff has not established substantial allegations that his experiences with  the payroll practices of Impact are similar to other laborers and their experiences with the payroll practices of the unnamed, nonparty staffing companies with whom Conrad does business.  In fact, the affidavit submitted by Conrad indicates that each staffing agency signed separate contractual agreements with Conrad and had different business relationships with Conrad.  [Alfred Decl., ¶ 5].  Additionally, each of the staffing companies with whom Conrad does business maintains its own payroll records and pays its employees directly; Conrad does not provide compensation to any staffing company employee and has no information on the pay practices of its staffing companies. [Alfred Decl., ¶ 8].  Thus, Conrad has no direct knowledge

18

of situations where staffing companies have not paid overtime to nonexempt employees. [Alfred Decl., Exhibit 1, ¶ 8].

As in *Xavier*, the Court cannot conditionally certify a class consisting of those employed by any other staffing company doing business with and assigned to work with Conrad based on the showing made.  The facts of this case would require too particularized and individualized an analysis of each worker's situation.  *Id*. at 880.  The potential plaintiffs' claims are better tried as individual cases based upon the conditions at each different job site and the payroll practices of each contractor.  *Id*. (*citing England v. New Century Financial Corp*, 370 F.Supp.2d 504, 511 (M.D. La. 2005)).

Plaintiff argues that his situation is similar to that of the plaintiffs in *Lima*, which was certified as a collective action on a limited basis.  There, plaintiffs, predominately immigrants, sued two contractors and a subcontractor alleging they were not paid proper overtime wage for their work as manual laborers during the clean-up following Hurricane Katrina.  Named plaintiffs and three other individuals who had opted-in submitted affidavits stating that they had worked for defendants in September of 2005, during which they were housed in a hotel with 350 to 400 other workers who were subject to identical pay practices.  Judge Fallon found that, given the lenient standard at the notice stage, plaintiffs and other putative class members, including those who worked for other subcontractors, were similarly situated with respect to defendants' pay provisions so as to justify conditional certification.

In *Xavier,* Judge Zainey distinguished *Lima* as follows:

> The [*Lima*] plaintiffs requested and the Court granted certification for workers
> who worked *for only two contractors* performing manual labor services directly
> or indirectly through a subcontractor in the Gulf Coast area post-Hurricane
> Katrina for *a limited period of time*. The *Lima* court was presented with a limited
> well-defined class who were similarly situated with the named plaintiffs. Unlike
> the *Lima* case, the plaintiffs here have failed to show that they and the opt-in
> plaintiffs were the victims of a common unlawful policy or practice and have not
> shown that they are similarly situated. Further, plaintiffs *do not designate the
> subcontractors at issue* nor the applicable job sites and they do not describe the
> specific job at each job site which is at issue. Rather they broadly request that "all
> individuals who worked or are working for Belfor USA performing manual labor
> either directly or indirectly through various subcontractors in various projects
> throughout the United States *over the last three years* who were eligible for
> overtime pay pursuant to the FLSA, 29 USC § 207 and who did not receive
> overtime" be certified into one action. The Court cannot make such a certification
> based upon the showing made and given that the facts of this case would require
> too particularized and individualized an analysis of each worker's situation.

(emphasis added).  *Xavier*, 585 F.Supp.2d at 880.

The Court finds that this case is more analogous to *Xavier*.  *Lima* involved only two

contractors performing manual services directly or indirectly through a contractor. In the present

case, as in *Xavier,* the plaintiff fails to identify any of the staffing agencies which he alleges

improperly compensated their employees.  Rather, he seeks to certify a collective action of any

of the thousands of workers providing manual labor for any of the 13 unnamed staffing

companies working for Conrad over a period of  three years at three different job sites.  The

collective actions sought to be certified in this case is distinct from the limited, well-defined

class as in *Lima*.  Under the circumstances of this case, it would be unduly burdensome to

require Conrad to identify which employees of these unnamed staffing agencies were eligible

to receive overtime and did not receive overtime over a three-year period. *See H&R Block, Ltd.,* 186 F.R.D. at 401 ("employers should not be unduly burdened by a frivolous fishing expedition conducted by the plaintiff at the employer's expenses."). Accordingly, based on the pleadings and affidavits submitted, this Court finds that Virgen has failed to meet his burden of making a preliminary factual showing that similarly situated individuals exist. Conditional certification should, therefore, be denied.

## IV. CONCLUSION

Based on the foregoing reasons, the Motion for Conditional Certification is **DENIED.**

Signed this 2nd day of November, 2015, at Lafayette, Louisiana.

**CAROL B. WHITEHURST**
**UNITED STATES MAGISTRATE JUDGE**